UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                  Civ. No. 16-3019 (PAM/FLN)

            Petitioner,

v.                                           **MEMORANDUM AND ORDER**

Patrick Brown Thunder,

            Respondent.

---

This matter is before the Court on the Report and Recommendation ("R&R") of United States Magistrate Judge Franklin L. Noel dated February 24, 2017. In the R&R, Magistrate Judge Noel recommends denying the Government's Petition to Determine Present Mental Condition of an Imprisoned Person under 18 U.S.C. § 4245. Judge Noel assumed without deciding that Respondent Patrick Brown Thunder is suffering from some kind of mental disease or defect, but concluded that the Government did not meet its burden of proving that Thunder is in need of custody for care or treatment.

The Government filed a timely objection to Judge Noel's conclusion that Thunder is not in need of custody for care or treatment. According to statute, the Court must conduct a de novo review of any portion of the R&R to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); D. Minn. L.R. 72.2(b). Based on that de novo review, the Court adopts the R&R.

**DISCUSSION**

Under 18 U.S.C. § 4245, a federal prisoner may not be transferred to a mental hospital for care and treatment without the prisoner's consent or a court order. If the

prisoner objects to a transfer, the court must conduct a hearing to determine "if there is reasonable cause to believe that the person may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. § 4245(a). "If, after the hearing, the court finds by a preponderance of the evidence that the person is presently suffering from a mental disease or defect for treatment of which he is in need of custody for care or treatment in a suitable facility, the court shall commit the person to the custody of the Attorney General." Id. § 4245(d).

Although § 4245 does not define when a prisoner is in need of custody for care or treatment, a prisoner is in need if treatment is "more than merely beneficial" to the prisoner. United States v. Horne, 955 F. Supp. 1141, 1147 (D. Minn. 1997). For example, a prisoner is in need of treatment if he would pose a danger to himself or others if placed in the general prison population. Id. at 1146. "A finding of dangerousness, however, is not required." United States v. Riley, No. 08cv171, 2008 WL 974839, at *3 (D. Minn. Apr. 8, 2008). A prisoner may be in need of treatment if he is unable to function in the general population of a prison because of a mental disease or defect. Id. A prisoner may also be in need of treatment where a diagnosis is properly supported by psychological or psychiatric testimony. Horne, 955 F. Supp. at 1146.

The Government did not meet its burden of proving that Thunder is unable to function in the general prison population. After the district court sentenced Thunder in 2013, FMC-Rochester staff conducted an initial mental health screening and determined that Thunder did not have any mental health issues. (Gov't Ex. 1 (Docket No. 14) at 2-

3.) Between April 2013 and November 2015, Thunder was stable in the general population. (Id.) In November 2015, Thunder had the only fight he has ever been involved in during his incarceration. (Gov't Ex. 2 at 1.) Thunder took full responsibility and explained:

> It led to over a year ago when [my cellmate] first moved in. [He g]ot into it with everyone. It is his hygiene. People get tired of things. I was not trying to be an enforcer. [I] asked him to pick things up. He struck me. We both hit each other. He's been telling people what we have been charged for. He has paperwork on our crimes . . . I made a mistake and I learned from it. Yes, we were fighting.

(Id. at 2-3.) A prison psychology intern interviewed Thunder after the fight and concluded that Thunder has "no significant mental health issues" and was a "low" threat to others. (Gov't Ex. 3.)

On May 27, 2016, Dr. Jason Gabel conducted a clinical intervention with Thunder and concluded that Thunder "continued to function adequately on the open unit despite ongoing evidence of delusional beliefs." (Gov't Ex. 4 at 1.) Although Thunder "denied any interest in psychiatric medication or speaking with a psychiatrist," he agreed to move to a mental health unit for further evaluation. (Id. at 2.) On July 19, 2016, Dr. John McKenzie met Thunder for the first time. During the encounter, Thunder denied having a mental illness, refused to accept psychological treatment, and did not understand why he had been moved to solitary confinement the day before. (Gov't Ex. 5.) Dr. Shelly Stanton conducted a clinical evaluation the next day, diagnosed Thunder with schizophrenia, and concluded that Thunder was at risk of harming others. (Gov't Ex. 6 at 4.) Thunder continued to deny he had a mental illness. (Id.)

Since prison staff moved Thunder to the mental health unit, Thunder has made some vague, general threats of violence, but these threats stem from his poor relationship with Dr. McKenzie, his forced meetings with mental health professionals, and his frustration concerning his solitary confinement. Dr. McKenzie's August 2016 report even indicates that Thunder logically reasoned that he did not want to harm anyone because he did not want to "lose any more good time." (Gov't Ex. 1.) In September 2016, Thunder insulted McKenzie and a subsequent disciplinary report indicated that Thunder was "competent to participate in disciplinary proceedings, and he should be considered responsible for his behavior at the time of the incident." (Gov't Ex. 7 at BOP_001465.) Judge Noel also observed Thunder testify at the evidentiary hearing that he did not "think anybody like [him] should be" in solitary confinement. (Tr. at 85.) Given Thunder's lack of violent behavior or specific threats of violence, his testimony at the evidentiary hearing, and his previous ability to function in the general prison population, the Government has failed to prove by a preponderance of the evidence that Thunder is need of custody for care or treatment because he is unable to function in the general population.

The Government also did not meet its burden of proving Thunder is in need of custody for care and treatment because Dr. McKenzie's report and testimony does not properly support his diagnosis. Dr. McKenzie's August 2016 report is based merely on the observations of his interns, students, and staff, the Pre-Sentence Investigation Report, the Psychology Data System, and other computer record and information systems. (Gov't Ex. 1.) Dr. McKenzie has been unable to perform a mental health assessment

because of his poor relationship with Thunder, and as of January 9, 2017, Thunder has yet to complete a psychiatric treatment session. (Gov't Ex. 7 at BP_001403.) Moreover, Dr. McKenzie's delusional-disorder diagnosis conflicts with Dr. Stanton's schizophrenia diagnosis. Based on that inconsistency and the lack of a proper mental health assessment, Dr. McKenzie's report and testimony does not properly support his diagnosis.

**CONCLUSION**

The Government did not prove by a preponderance of the evidence that Thunder is in need of custody for care or treatment. Accordingly, **IT IS HEREBY ORDERED that**:

1. The R&R (Docket No. 16) is **ADOPTED**; and
2. The Government's Petition (Docket No. 1) is **DENIED.**

Dated: May 9, 2017                      *s/ Paul A. Magnuson*
                                                    Paul A. Magnuson
                                                    United States District Court Judge